## 15611

ALTMAN v. STANDARD MUTUAL LIFE INSURANCE CO.

(28 S. E. (2d), 636)

May, 1943.

*Messrs. Willcox, Hardy, Houck & Wallace,* of Florence, S. C., Counsel for Appellant,

*Messrs. McEachin & Townsend,* of Florence, S. C., Counsel for Respondent,

Counsel for Appellant, in Reply,

January 15, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

On March 7, 1940, the defendant, upon the written application of Mattie Marie Altman, delivered to her a policy insuring her life in the amount of $2,000.00. She died on September 6, 1942, after the policy had been in force and effect for a period of more than two years, from cancer, and it appears that she suffered from this physical ailment several years prior to the issuance of the policy.

Following the death of the insured, the defendant refused to pay the amount of the insurance, upon grounds hereinafter to be discussed, and this action was thereupon brought by the beneficiary, Maxie W. Altman, resulting in a verdict in his favor for the full amount of the policy.

The appellant defended upon the ground that at the time the policy was delivered to the insured, she was suffering from an incurable cancer, which fact she fraudulently concealed. The insurance company contends, therefore, that the contract of insurance never became effective; that it is not a matter of misrepresentation, but a question of whether any contract ever existed. This contention was raised upon trial, on motion for a directed verdict, which was overruled.

In the application, which formed a part of the policy contract, it was provided that if the insured were "not alive and in good health at the time of the delivery and acceptance of the policy * * * I hereby forfeit any benefits * * * and hereby authorize the secretary to cancel the policy."

The policy provides: "As a condition precedent to the taking effect of this policy, this policy must be manually delivered to the Insured while alive and in good and vigorous health, and free from all bodily ailments and disease at the time of the delivery of the policy and acceptance thereof by the insured."

Appellant's motion for a directed verdict was made upon the ground that the undisputed testimony showed that the insured was not in good health on the date of the application or on the date of the issuance of the policy, it being a condition precedent to the taking effect of the policy that she should be in good health at the date of its delivery.

The insurance contract contained this provision with reference to incontestability: "This policy shall be incontestable after it has been continuously in force during the lifetime of the insured for a period of two years from its effective date, or the date of any reinstatement thereof except (1) for nonpayment of premiums * * * *"

Upon the trial, the trial Judge excluded testimony tending to prove that the insured was suffering from an incurable cancer when the policy was issued and delivered, basing his ruling upon the incontestable provision of the policy, and the statutory law, Section 7986 of the 1942 Code, which reads as follows: "All life insurance companies, fraternal benefit associations or any other company, corporation or association by whatever name known, who issues a policy or certificate of insurance on the life of a person shall, after a period of two (2) years from the date of such policy or certificate of insurance, be deemed and taken to have waived any right they may have had to dispute the truth of the application for insurance, or that the assured person had made false representations shall be deemed and taken to be true * * * ."

We have uniformly held that the defense of fraud and misrepresentation in the application is not available to the insurer after the expiration of the period fixed in the incontestable clause, unless such defense is specifically reserved to the insurer in that clause. *Henderson v. Life Ins. Co. of Virginia,* 176 S. C., 100, 179 S. E., 680, And see the numerous cases cited in the opinion in that case.

By the specific provisions of Section 7986, fraud and misrepresentation in the application are not available to the insurer after a period of two years from the date of the policy. While the practice of fraud is against public policy, and fraud will, as a general rule, vitiate all contracts into which it enters, yet an incontestable clause in an insurance policy is upheld and given effect as against a claim of fraud.

In the well-considered case of *MacKendree v. Southern States Life Ins. Co.,* 112 S. C., 335, 99 S. E., 806, 807, it was held that where a life insurance policy provided in bold face type that it would "be incontestable from date of issue,"

the insurer could not set up a plea of fraud in an action on the policy.

The incontestable clause in the policy before us is general. Nothing is excepted from its scope if the premiums be paid. By the strong current of authority, this clause, together with the statutory law, precludes any defense after the expiration of two years on account of false statements warranted to be true although they may have been made for a fraudulent purpose. " * * * The grounds for its support are that insurance companies, in order to obtain business, represented that they will issue policies incontestable as to certain matters after a designated period, and individuals negotiate with them on that basis. Furthermore, the clause constitutes in effect a short period of limitation, which is as perfectly competent for the parties to agree upon. While it is true that fraud vitiates all contracts, yet in contracts of this kind, where the beneficiaries are placed at a disadvantage because the dead cannot speak, it is not contrary to public policy for the parties to agree that the company shall be precluded upon the subject after some specified time, reasonable, within which to make investigation. The clause lends stability to the contract, and renders life insurance of greater value to the insured and beneficiary." *Great Western L. Ins. Co. v. Snavely,* 9 Cir., 1913, 206 F., 20, 22, 124 C. C. A., 154, 46 L. R. A. (N. S.), 1057.

And see *Beard v. North State Life Ins. Co.,* 104 S. C., 45, 88 S. E., 285, and Annotation, 6 A. L. R., 452.

There was some conflict in the testimony as to the age of the insured at the time she applied for the insurance. In her application she states that she was 39 years old—that is, that she was born on January 18, 1901. In filing proof of claim after her death, the plaintiff, on information received from another member of her family, gave the date of the insured's birth as January 18, 1898.

However, this discrepancy was later explained, and as explained resulted in a sharp issue of fact as to the date of her birth, and was properly left to the jury for determination. Its only bearing on the case was whether the plaintiff was entitled to recover $1,780.00 or $2,000.00. The lower Court committed no error in refusing a peremptory instruction that plaintiff was not entitled to recover more than $1,780.00.

The lower Court excluded the affidavit of Miss De-Bruhl, Secretary of the appellant, which in her absence it was agreed should be admitted subject to its relevancy. This affidavit contained a statement of a rule of the company requiring a medical examination for women over 40 applying for insurance. We think there was no error in excluding this statement. It could have no relevancy unless fraud and misrepresentation were proved, and proof as to these issues went out of the case. The contents of the affidavit was only evidence of what the appellant company would have done if Miss Altman, the insured, had stated her age to be over 40.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGES WM. H. GRIMBALL and PHILIP H. STOLL, ACTING ASSOCIATE JUSTICES, concur.